DICKINSON, Justice,
concurring in part and dissenting in part:
¶ 37. I agree with the majority on all but one issue. The majority holds that neither spousal privilege applies to the voi-cemails Newell left for his wife, Diane. Specifically, the majority states that the voicemails were not barred by Mississippi Rule of Evidence 504, concluding that the messages “would have been communicated” to third persons and finding that each spouse waived Rules 504 and 601 — Newell by asking the police to examine Diane’s cell phone, and Diane by turning over her cell phone and voicemail password. Because I believe the majority’s analysis of Rules 504 and 601 is flawed, I respectfully dissent, in part.
¶ 38. Mississippi Rule of Evidence 504 renders inadmissible a “communication ... made privately by any person to that person’s spouse and [ ] not intended for disclosure to any other person.”[11] That Diane was Newell’s spouse is not in dispute, so the issue is whether Newell intended *79 the voicemails to be disclosed to any other person, and in addressing this issue, it does not matter whether the communication actually was disclosed by Diane, or even whether the communication was likely to be disclosed by Diane; unless Newell intended for Diane to disclose the communications, Mississippi Rule of Evidence 504⅛ privilege applies.
¶ 39. There is simply no evidence that Newell intended Diane to disclose to anyone the content of his voicemails to her. It strains credibility to suggest that one would leave a threatening, incriminating voicemail with the intent that it be disclosed to others. And because the record includes no evidence that Newell intended Diane to relay his voicemail to a third party, I would hold that the voicemails were privileged.
¶ 40. Waiver of Rule 504’s privilege requires the consent of both spouses.[12] The majority finds that both Newell and Diane implicitly consented to the introduction of the voicemails. Specifically, the majority finds that Newell consented by asking “the officers to check [Diane’s] phone, [knowing] that damaging messages were there,” and Diane consented by “surrendering] her phone and providing] the password to her voicemail.”
¶ 41. The majority misapprehends Newell’s request. Newell asked the police to “seize” Diane’s phone and inspect the call log to confirm his suspicion that Diane was cheating on him. The record includes no evidence the “damaging messages were there” on the phone, itself. Since we are guessing, it is more likely that the messages were stored on the cell phone carrier’s computers, and accessed by calling in with a password or code. In any case, Newell never authorized the police to listen to the voicemails.
¶ 42. While I agree with the majority that the trial court’s exclusion of toxicology evidence and refusal of a “Castle Doctrine” instruction constituted reversible error, I would hold that the voicemails Newell left for Diane were inadmissible.
GRAVES, P.J., JOINS THIS OPINION. RANDOLPH, J., JOINS IN PART.

. Miss. R. Evid. 504(a) (emphasis added).

. Miss. R. Evid. 601(a).